## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MATT BURCAR and JOHN BUREK,   )
on behalf of themselves and all others   )
similarly situated,   )
  )
    Plaintiffs,   ) Case No. 1:22-cv-12054-MFL-PTM
  )
vs.   )
  ) Hon. Matthew F. Leitman
DECORATIVE PANELS INT'L,   )
INC.,   )
  )
    Defendant.

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Matt Burcar and John Burek, on behalf of themselves and all others similarly situated, respectfully move this Court for an order granting final approval of the Settlement Agreement. The proposed final approval order is attached hereto as **Exhibit 5**. In support of this motion, Plaintiffs state as follows:

1. On August 31, 2022, Plaintiffs filed this case as a class action against Defendant Decorative Panels International, Inc. (hereinafter, "Defendant"), bringing claims of nuisance and negligence.[1]

---

[1] Plaintiffs filed their First Amended Complaint on January 13, 2023, containing identical causes of action for nuisance and negligence.

2.     The Complaint alleged that Defendant's ownership and operation of its industrial woodboard manufacturing facility near Plaintiffs' homes had caused odor impacts to their homes and the homes of their neighbors. (ECF No. 17, PageID. 167, ¶ 45).

3.     In an effort to avoid the time, risk, and expense of further litigation, the Parties engaged in lengthy settlement discussions to determine whether a resolution of the case could be reached prior to a hearing on Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint. To that end, Plaintiffs and Defendant agreed to participate in mediation with independent neutral Hon. Gerald E. Rosen (Ret.). On April 18 and June 27, 2023, Plaintiffs and Defendant participated in two full-day mediation sessions with Judge Rosen and reached the material terms of a settlement that would resolve all claims in this case, subject to class settlement approval by the Court after notice to the settlement class. (**Ex. 2**, Liddle Decl., ¶¶13).

4.     Based upon their investigation, and evaluation of the facts and law relating to the matters alleged in the action, Plaintiffs (on behalf of themselves and the proposed Class) and Class Counsel have agreed to settle the lawsuit, pursuant to the terms of the Settlement Agreement.

5.     The terms of the proposed settlement are fully set forth in the Settlement Agreement. (**Ex. 1**). Defendant has agreed to pay $1,000,000.00 in direct

monetary relief to be allocated pursuant to the procedures outlined in the Settlement

Agreement. (**Ex. 1**, pg. 16, §5)

6.    The Parties have agreed to a Class, for purposes of the Settlement only,

consisting of the following:

> All owner-occupants and renters of residential property at any point in
> the Class Period (1) whose property is located within one mile of the
> Defendant's Facility's property boundary; or (2) who submitted a
> "Resident Data Sheet" to Plaintiffs' Counsel. (**Ex. 1**, pg. 5, § 2(c)).

7.    The proposed Settlement was achieved in good faith through a highly

experienced neutral mediator and without any undue influence. Each side has

zealously represented its interests.  (**Ex. 2, ¶** 14).

8.    The proposed Settlement was achieved by counsel experienced in

similar litigation.  (**Ex. 2**, **¶¶** 5-9).

9.    On October 3, 2023, Plaintiffs presented the Settlement to the Court and

moved for an order preliminarily approving the Settlement pursuant to Fed. R. Civ.

P. 23(e). (ECF No. 33).

10.    The Settlement provides for a payment of $1,000,000 by Defendant for

the benefit of the Class.

11.    A hearing was held on Plaintiffs' Motion on December 4, 2023. (ECF

No. 34). On December 5, 2023, the Court entered an Order Preliminarily Approving

Class Action Settlement, which conditionally certified the Class under Fed. R. Civ.

P. 23(a) and (b)(3) and determined that the Settlement is "preliminarily approved as

fair, just, reasonable and adequate, subject to further consideration at a Fairness Hearing." (ECF No. 35, Pg.ID.521, ¶¶1-2). The Court also approved the class notice as "the best notice practicable under the circumstances" and ordered Class Counsel to disseminate the notice pursuant to the terms of the Settlement. (*Id.*, ¶3).

12.   A Fairness Hearing was set for March 5, 2024 at 1:30 p.m., at which time the Court could consider any objections to the Settlement and whether to enter Final Judgment. (*Id.*, Pg.ID.522, ¶6).

13.   On December 26, 2023, Class Counsel disseminated the approved Class Notice to all available residential addresses within the Class Area. (**Ex. 2**, ¶27). Class Counsel also created a Settlement Website, hosted at www.LSCCounsel.com/dpisettlement, where copies of the Complaint, Notice, Claim Form, Settlement Agreement, and Class Area Map were published and made available to Class Members. Class Counsel also established a toll-free hotline, where Class Members could receive direct support from Class Counsel.

14.   Class Counsel is pleased to report that the reaction of the Class to the proposed Settlement has been overwhelmingly positive. While the claims deadline remains open through February 26, 2024, 328 Class Member households have submitted valid claims that have been approved for payment by Class Counsel as of the date of this filing.

15.   Only one opt out has been received. (**Ex. 3**, Opt Out(s)).

16.   Only one objection has been received. (**Ex. 4**, Objection(s)).

17.   For the reasons discussed in greater detail in the enclosed Memorandum in Support, Plaintiffs respectfully request that the Court grant final approval of the Class Action Settlement by entering the order attached hereto as **Exhibit 5**, granting:

a.  Final approval of the Settlement as fair, reasonable, and adequate;

b.  Final certification of the Class for settlement purposes;

c.  Final appointment of Plaintiffs as Class Representatives;

d.  Final appointment of Class Counsel;

e.  Plaintiffs' request for attorneys' fees in the amount of $265,000 and reimbursement of litigation costs in an amount not to exceed $40,000; and

f.  An incentive award of $1,500 each to the two Class Representatives.

**WHEREFORE** Plaintiffs, on behalf of themselves and the proposed Class, respectfully request that the Court grant this Motion and enter the proposed Final Approval Order (**Exhibit 5**).

Dated:        February 20, 2024          Respectfully Submitted,

*/s/ Matthew Z. Robb*
Steven D. Liddle
Nicholas A. Coulson
Matthew Z. Robb
**LIDDLE SHEETS COULSON P.C.**
975 E. Jefferson Avenue
Detroit, MI 48207
(313) 392-0015
sliddle@lsccounsel.com
ncoulson@lsccounsel.com

mrobb@lsccounsel.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| MATT BURCAR and JOHN BUREK, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:22-cv-12054-MFL-PTM |
| vs. | ) ) ) | Hon. Matthew F. Leitman |
| DECORATIVE PANELS INT'L, INC., | ) ) ) | |
| Defendant. | | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## **<u>STATEMENT OF ISSUES PRESENTED</u>**

1.     Is the Settlement Agreement fair, reasonable and adequate under Fed. R. Civ. P. 23(e)(2)?

   - **Plaintiffs Answer:** YES.

2.     Does class certification under Fed. R. Civ. P. 23(a) and (b)(3) remain appropriate for settlement purposes?

   - **Plaintiffs Answer:** YES.

3.     Are the requested attorneys' fees reasonable in light of the benefit obtained for the Class?

   - **Plaintiffs Answer:** YES.

4.     Should the Court approve a modest incentive award to the Class Representatives?

   - **Plaintiffs Answer:** YES.

## <u>MOST APPROPRIATE AUTHORITIES</u>

Fed. R. Civ. P. 23(a)

Fed. R. Civ. P. 23(b)(3)

Fed. R. Civ. P. 23(e)

*Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496 (E.D. Mich. 2000)

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344 (6th Cir. 2009)

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

## INTRODUCTION

Plaintiffs Matt Burcar and John Burek brought this action on behalf of themselves and a proposed class of their neighbors, alleging that odorous emissions from Defendant Decorative Panels International, Inc. (hereinafter, "DPI" or "Defendant") have entered their properties, and properties throughout the proposed Class Area, interfering with the ability of the proposed class to use and enjoy their homes and properties.

This case comes before the Court for a determination regarding the fairness, reasonableness, and adequacy of the Class settlement, with notice having now been delivered to the Class. Plaintiffs are pleased to report that the reaction of the Class has been overwhelmingly supportive of this excellent settlement. While the claims period remains open through February 26, 2024, 328 claims have been received and approved by Class Counsel. (**Ex. 2**, ¶29). Only one opt-out, and only one objection was received. (**Ex. 4**, Objection(s)). In view of the Class's overwhelmingly positive reaction, and the substantial benefits conferred by the Settlement compared against the substantial costs, risks, and delay of further litigation, the Settlement exceeds the standard for final approval.

Plaintiffs' Counsel at Liddle Sheets Coulson P.C. ("LSC") are among the vanishingly few, and perhaps only attorneys in the United States to dedicate as substantial proportion of its practice to prosecuting such cases with tangible results.

This is because the necessary resources and experience as well as the risk of substantial loss make such cases difficult or impossible for most law firms to prosecute. As stated by one federal court:

> Class Counsel—from the Detroit-based firm Liddle [Sheets Coulson] P.C.— are among the few attorneys that specialize in class-action odor-nuisance litigation. Class Counsel skillfully and vigorously investigated and prosecuted the Class's claims … Absent the skill and efficiency of Class Counsel, it is also unlikely that individual Class Members could have obtained any recovery on their nuisance claims.

*Batties v. Waste Mgmt. of Pa., Inc*., No. 14-7013, 2016 U.S. Dist. LEXIS 186335, at *47 (E.D. Pa. May 11, 2016). Class Counsel is deeply versed in analyzing the strength of such cases, the potential benefits of appropriately settling them, and the cost, risk, and delay that would be imposed on the Class in the absence of settlement. (**Ex. 2**, ¶13). This experience has led to an outstanding result for the Class here, and Plaintiffs request that this Court grant final approval.

## FACTUAL BACKGROUND

On August 31, 2022, following an extensive pre-suit investigation by Plaintiffs' Counsel, Plaintiffs filed a complaint against Defendant for nuisance and negligence. Plaintiffs and the Class are residents of the area surrounding Defendant's industrial woodboard manufacturing facility in Alpena, Michigan (hereinafter, the "Facility").

Plaintiffs' First Amended Complaint alleged that Defendant had failed to control the odorous emissions generated by the facility, particularly the waste sludge

lagoons where byproducts from Defendant's manufacturing process were treated, giving rise to causes of action for nuisance and negligence and claims for monetary and injunctive relief (ECF No. 17, PageID. 167-176). Plaintiffs further alleged that on frequent and recurrent occasions, odorous emissions from the Facility entered onto their properties, interfered with their abilities to use and enjoy their homes, and diminished the value of their properties. (*Id.*, PageID. 167, ¶ 45). Defendant strongly denies these allegations and filed a Motion to Dismiss Plaintiffs' Complaint, which remained pending at the time this Settlement was reached.

Following an investigation by Plaintiffs' uniquely experienced counsel, informal discovery between the Parties, and two full-day mediation sessions held on April 18 and June 27, 2023, before a neutral mediator, Hon. Gerald E. Rosen (Ret.), the Parties reached an agreement to fully and finally resolve the case.

## I.   TERMS OF THE SETTLEMENT AGREEMENT.

Plaintiffs rely on their previously filed memorandum in support of their Motion for Preliminary Approval of Class Action Settlement for a complete summary of the material terms of the Settlement, which is attached hereto as **Exhibit 1**. Under the proposed Settlement, Defendant will be required to provide monetary relief to the Class in the amount of $1,000,000, which will be distributed on an equal, per household basis (after the payment of costs and attorney fees, such as the Court

may approve) to all Households who timely submit an approved Claim Form. (**Ex. 1**, pg. 16, §5).

In exchange for this $1,000,000 payment, Plaintiffs offer a full release and discharge by Plaintiffs and the Class of any and all claims that were, or could have been, asserted between August 31, 2019, and the Effective Date of the Settlement (the "Class Period"). (*Id.*, pgs. 9-11, § 2(bb); pg. 5, § 2(g)). The Release expressly preserves the Class's right to bring any claims that any may have for medically diagnosed personal injuries and any claims based on odors or other emissions of airborne pollutants or contaminants that occur after the Effective Date. (*Id.*)

The Settlement provided fair, easy to understand terms for Class Members to exercise their right to obtain payment, opt-out, or object to the Settlement. From the date the notice was mailed, Class Members were afforded forty-five (45) days to object to or opt out of the Settlement. (**Ex. 1**, pgs. 17-19, §6). Class Members who wished to participate in the Settlement were given sixty (60) days to submit a valid, timely Claim Form for an equal share of the common fund. (*Id.*; *see also* ECF 33-7, Claim Form).

## II.    CLASS NOTICE AND REACTION OF THE CLASS.

The reaction of the Class has been overwhelmingly, almost unanimously, positive. On December 26, 2023, the approved Class Notice was disseminated to all

available residential addresses within the Class Area.[2] (**Ex. 2**, ¶28). Class Counsel also created a Settlement Website, where copies of the Complaint, Notice, Claim Form, Settlement Agreement, and Class Area Map were published and made available to Class Members.[3] (*Id.*) Class Counsel also established a toll-free hotline, where Class Members could receive direct support from Class Counsel. (*Id.*) In short, the notice program was successfully executed.

By all accounts, the Notice was effective, and the Class overwhelmingly approves the Settlement. (**Ex. 2**, ¶29). As of this filing, 328 valid claims have been approved for payment by Class Counsel. Only one opt-out was received.[4] (**Ex. 3**, Opt Out(s)). Only one objection was received. (**Ex. 4**, Objection(s)).

The lone objection comes from Raymond Fox, who stated that "I am NOT content with the settlement amount." (**Ex. 4**). Mr. Fox noted that he and his wife have suffered from headaches due to the odors from Defendant's facility, and his daughter "was throwing up from the smell." (*Id.*) Mr. Fox expressed that the odors forced his family to travel out of town to get fresh air while enjoying the outdoors. Mr. Fox also raised concerns about Defendant's responses to his prior odor

---

[2] 1,748 residential households received the notice.

[3] www.LSCCounsel.com/dpisettlement (last visited February 19, 2024).

[4] The claims period remains open through February 26, 2024.

complaints. He states that "I think this settlement should be bigger and be paid out in scale to who was closer to the plant to farther out."[5] (*Id.*)

## III. PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION COSTS, AND MODEST INCENTIVE AWARDS TO THE CLASS REPRESENTATIVES.

Pursuant to the terms of the Settlement, Plaintiffs have the right to request payment of reasonable attorneys' fees, costs or expenses, and a modest incentive award to the two named Plaintiffs who stepped forward to represent the interests of the Class and obtain the benefits of this Settlement.

The Settlement provided that Class Counsel may apply to the Court for an award of attorneys' fees in an amount not to exceed one-third (1/3) of the Total Settlement Value, net of expenses. (**Ex. 1**, pg. 12, § 3(e)). The Settlement further provided that Class Counsel may apply for reimbursement of any reasonable litigation costs or expenses to be paid from the Settlement fund. (*Id.*) Finally, the Settlement provided that, subject to the Court's approval, Plaintiffs could apply for a one-time incentive payment of no more than $1,500 to the named Class Representatives. (**Ex. 1**, pg. 15, § 5(b)). Each of these terms were clearly explained through to Class Members through the approved Notice. (ECF 33-5, Pg.ID.498). No

---

[5] Plaintiffs respond to the substance of Mr. Fox's objection in the argument section below.

objections were made to the requested attorneys' fees or the incentive payments to the Class Representatives.

For the following reasons, Plaintiffs respectfully request that the Court finally approve the Settlement by entering the order attached hereto as **Exhibit 5**.

## LEGAL STANDARD

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class— or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). In granting final approval, courts are directed to consider whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

   i.   the costs, risks, and delay of trial and appeal;

   ii.   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   iii.   the terms of any proposed award of attorney's fees, including timing of payment; and

   iv.   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Sixth Circuit has long recognized that the law favors the settlement of class action lawsuits. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"). "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources*." In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (citations omitted).

## ARGUMENT

### I. The Court Should Finally Approve the Settlement as Fair, Adequate, and Reasonable.

The Settlement Agreement is more than fair, reasonable, and adequate because it delivers substantial financial relief to the Class on an immediate basis, without delaying or subsuming any future award with protracted, complex, risky, and costly litigation—the result of which would be anything but certain. Further, the Settlement preserves all future claims and all claims for personal injury, ensuring that the Class' rights are adequately protected. The fairness of this Settlement is underscored by the very strong claim rate and the lack of a significant number of objections, which are highly common in cases of this type.

### A. Plaintiffs and Class Counsel Have Zealously and Adequately Represented the Class.

There are "two criteria for determining adequacy of representation: 1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996).

Here, Plaintiffs are represented by highly experienced class counsel at LSC, which has been litigating air pollution class actions of this type for more than 25 years. (**Ex. 2**, ¶5). As one federal court noted in a similar case involving a similar settlement:

> Class Counsel—from the Detroit-based firm Liddle [Sheets Coulson] P.C.—are among the few attorneys that specialize in class-action odor-nuisance litigation. Class Counsel skillfully and vigorously investigated and prosecuted the Class's claims … Absent the skill and efficiency of Class Counsel, it is also unlikely that individual Class Members could have obtained any recovery on their nuisance claims.

*Batties v. Waste Mgmt. of Pa., Inc.*, No. 14-7013, 2016 U.S. Dist. LEXIS 186335, at *47 (E.D. Pa. May 11, 2016). Plaintiffs' counsel has been appointed to represent many dozens of classes of residents in dozens of similar cases in both state and federal courts. (**Ex. 2**, ¶8-9). Plaintiffs' Counsel has extensive experience in both negotiating and administering similar settlements. (**Ex. 2**, ¶13).

This outstanding settlement was reached on behalf of the Class in large measure due to LSC's experience, diligent pre-suit investigation and vigorous advocacy on behalf of the Class. This pre-suit investigation consisted of Freedom of

Information Act requests to the City of Alpena and the Michigan Department of Environment, Great Lakes, and Energy (EGLE) and a comprehensive review of the records thereby obtained. (**Ex. 2**, ¶¶16) Plaintiffs' Counsel additionally surveyed the putative class regarding their experiences. (*Id.*) Class Counsel is adequate.

Further, the named Plaintiffs in this case have been highly responsive, stepped forward to represent the interests of the Class, taken on the risk of filing a federal lawsuit, and have no conflicts with any Class Members. (**Ex. 2**, ¶42). The adequacy element is easily satisfied.

### B. The Settlement Was Reached as a Result of Extensive Arm's-Length Negotiations with Judge Rosen.

The next factor analyzes whether "the proposal was negotiated at arm's length[.]" Fed. R. Civ. P. 23(e)(2)(B). "There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 2 *Newberg On Class Actions*, Herbert B. Newberg and Alba Conte, §11.41, at 11-88 (3d ed. 1992). "[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note (2018 Amendment).

The Parties engaged in two separate full-day mediations before the Hon. Gerald E. Rosen (Ret.), who is a highly experienced and respected neutral mediator.

At mediation, a frank discussion was held between the Parties regarding the substantive costs and benefits presented to each side that allowed both sides to carefully evaluate the value of this case and agree that the benefits of early resolution greatly outweighed the risks and costs of prolonged litigation. While settlement is necessarily a compromise, the Settlement addresses the concerns of Plaintiffs and the Class and delivers valuable monetary relief that was blessed by Judge Rosen.

### C.    The Proposed Relief Is Adequate.

Rule 23(e)(2)(C) requires the Court to ensure "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(c). Consideration of these factors readily supports final approval.

Defendant's payment of $1,000,000 is an excellent result for the Class under the circumstances. The costs, risks, and potential delays in a case like this are difficult to overstate. Litigating air pollution class actions is inherently costly, time consuming, risky, and often requires the involvement of highly specialized experts and the necessity for extensive documentary and testimonial evidence. (**Ex. 2**, ¶20-24). The class certification stage alone typically lasts for a period of years and

involves significant costs, without significantly enhancing the likelihood of a favorable judgment at trial. (**Ex. 2**, ¶20). In the past, LSC has expended in excess of $200,000 at the class certification phase alone. (**Ex. 2**, ¶24).

Although Plaintiffs believe that their claims, and those of the Class, are meritorious, Plaintiffs face significant risks in seeking to obtain a judgment against Defendant in this matter, any number of which could have been the death knell of the case. (**Ex. 2**, ¶20). Odor nuisance class actions are unique from many other substantive categories of class action litigation, in that they are not infrequently denied certification depending on the underlying factual circumstances. (**Ex. 2**, ¶21). While Plaintiffs continue to believe that class certification would have been appropriate in this case even absent settlement, Class Counsel also recognizes that class certification, particularly in an environmental case, is anything but certain.

Beyond the "rigorous analysis" standard now employed by federal courts evaluating the merits of class certification, Plaintiffs recognize the significant risk in obtaining class certification in federal courts. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). Further, even where certification is granted, the possibility of appeal and/or decertification remains, either of which represents a significant risk and would substantially delay a possible resolution. *See Powell v. Tosh*, No. 5:09-CV-00121, 2013 U.S. Dist. LEXIS 120448, at *5 (W.D. Ky. Aug. 2, 2013) (decertifying class).

If class certification were denied, the practical effect for the vast majority of the class would likely be to receive no relief at all. (**Ex. 2**, ¶22). Even if a large number of class members brought actions in their individual capacities, many hurdles would remain, and it is possible, if not likely, that the costs of litigation, without the benefit of being spread across the class, would significantly erode any potential recovery. (*Id.*)

Litigating beyond the class certification stage would necessarily involve voluminous discovery and likely hundreds of thousands of dollars' worth of expert testimony. Such litigation could proceed for several years through trial and likely appeals. Even if Plaintiff were able to prove to the finder of fact that significant odors were emitted from Defendant's Facility, Plaintiff would still need to prove that those odors were transported to the properties throughout the Class Area at nuisance levels. (**Ex. 2**, ¶23). This would likely result in competing scientific testimony of sufficient complexity that the ultimate outcome would be anything but certain, and the risk of no recovery would be significant. (*Id.*) While Plaintiffs are confident that they would have made a strong case, the sheer number of variables in substantiating claims on behalf of the proposed Class makes winning and sustaining a judgment an uncertain proposition.

Further, Plaintiffs would have had to establish damages, both individually and on a class basis. In addition to being costly and time consuming, Defendant could

and likely would have challenged Plaintiffs' damages and/or the damages alleged on behalf of the Class. (**Ex. 2**, ¶23). There are any number of hurdles that have a very serious chance that no recovery at all would be obtained if the case proceeded through class certification, appeal, merits discovery, expert discovery, trial, and proof of damages. (**Ex. 2**, ¶41).

The Settlement achieves substantial benefits for the class without expending additional resources and without delay. The Class will obtain immediate relief, as opposed to waiting years for an uncertain outcome which, if it arrives at all, would be many years down the road and significantly diminished by the costs of protracted litigation. The risks, costs, and delays associated with continued litigation, and the very real possibility of obtaining no recovery for the Class weigh heavily in favor of Settlement on these terms.

The other factors under Rule 23(e)(2)(C) are also satisfied. The Settlement Agreement provides for a claims process that guarantees the right of every class member to receive an equal share of the Settlement fund. The net Settlement fund will be divided equally on a per household basis between all households who submit a timely, valid claim form—of which there are currently more than 300 valid claims. The proposed method for processing claims and distributing relief is thus fair, and experienced Class Counsel is more than qualified to effectuate the Settlement, as it has done in many dozens of similar cases in the past.

Finally, while the Court has discretion over the award of attorneys' fees, the settlement is not conditioned on any specific award of attorneys' fees or incentive award to the named Plaintiffs. The Settlement explicitly states that the Court's award of attorneys' fees are "not consideration for this Settlement Agreement[.]" (**Ex. 1**, pg. 13, ¶3(f)). The Settlement terms regarding attorneys' fees are thus fair, and there are no agreements between the Parties other than the Settlement. This overwhelmingly supports final approval.

> **D.    The Settlement Treats Class Members Equally Relative to One Another.**

"It is well-settled that 'a Plan of Allocation need not be, and cannot be, perfect.'" *In re Auto. Parts Antitrust Litig*., No. 12-md-02311, 2019 U.S. Dist. LEXIS 219819, at *93 (E.D. Mich. Dec. 20, 2019) (citation omitted). "Although the satisfaction of everyone is generally unobtainable, a plan of allocation should strive to obtain a delicate balance between precision and administrative convenience[.]" *Id*. (citation omitted). Courts find that settlements treat class members equitably where beneficiaries receive an "equal share of the … Settlement fund." *Bitzko v. Weltman*, No. 1:17-cv-00458 (BKS/DJS), 2021 U.S. Dist. LEXIS 149596, at *16 (N.D.N.Y. Aug. 10, 2021) (citation omitted). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Amos v. PPG Indus*., No. 2:05-cv-70, 2019 U.S. Dist. LEXIS 139021, at *30 (S.D. Ohio Aug. 16, 2019).

The Settlement Agreement allows Plaintiffs to request, at the sole discretion of the Court, a one-time $1,500 class representative incentive award to be paid to each of the Class Representatives for their efforts on behalf of the Class. (*See* Ex. 1, pg. 15, ¶5(b)). Apart from a discretionary incentive award, the Settlement Agreement does not grant any Class Member preferential treatment. All Class Members are equally eligible to make claims for payment from the Settlement.

### E.      The Reaction of the Class Has Been Overwhelmingly Positive.

Some courts continue to consider the factors used to evaluate settlement fairness prior to the Rule 23(e) amendments. "In addition to the Rule 23(e)(2) factors, courts may also consider circuit-specific factors in the analysis. In the Sixth Circuit, those factors (the "UAW factors") are: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *See UAW*, 497 F.3d at 631. "No single factor is determinative, and the Court should consider the factors relevant to the circumstances of each individual case." *Id*. (citation omitted). Factors 1-5 are largely subsumed by the Rule 23(e)(2) factors. *See Macy v. GC Servs. Ltd. P'ship*, 2019 U.S. Dist. LEXIS 210632, at *4-5 (W.D. Ky. Dec. 6, 2019).

The sixth factor, the reaction of absent Class Members, weighs heavily in support of final approval. As stated above, 328 Class Member households have submitted timely, valid claims, and the claims period remains open. Only one opt-out was received, and only one objection was received, by Mr. Raymond Fox, who lives in close proximity to the DPI Facility. Mr. Fox objects to the Settlement on two grounds: (1) the settlement amount should be higher; and (2) residents who live in closer proximity should receive more compensation. (**Ex. 1**, Objection(s)).

While Class Counsel is highly respectful of Mr. Fox's concerns, they do not justify overturning an otherwise outstanding Settlement. First, similar objections to the amount of a monetary award are routinely overruled. That is because "The propriety of a settlement must be assessed as a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery (or reduced recovery)." *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 294 (E.D. Mich. 2017). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *In re Polyurethane Foam Antit. Litig.*, 168 F.Supp.3d 985, 1001 (N.D. Ohio 2016). The Court may not merely consider the settlement amount "in a vacuum," but must weigh the settlement amount with consideration for "the potential for complete non-recovery should the case proceed

to trial." *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. at 294. As stated above, that risk of zero recovery for some, or all, Class Members is significant in this case.

While Plaintiffs' and Class Counsel's interests are aligned with Mr. Fox's desire for a greater monetary award, the risk, complexity, and uncertainty of establishing class certification, causation, and damages weigh heavily in favor of the Settlement on the agreed-upon terms. Considering the significant risks of obtaining no recovery at all, the costs intendent to complex class litigation, and losing a contested class certification motion, the $1,000,000 consideration is adequate.

Second, while one can imagine any number of potential permutations of factual scenarios that could conceivably justify differing payments (e.g. proximity, property value, number of residents, direction from the facility, prevailing winds, time at residence, etc.) it would be nearly impossible to account for these differences in an administratively feasible way that all Class Members would deem fair. If proximity to the Facility alone were utilized to increase settlement payments relative to one another, other Class Members would likely complain that they experienced greater impacts than others, for any number of reasons. Creating arbitrary distinctions between Class Members' entitlement to relief may also threaten Rule 23's consideration for whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The proposal to provide Class Members

with equal shares of the monetary award is the fairest, and most administratively feasible method, for distributing relief in cases of this type.

The overwhelmingly positive reaction of the Class supports final approval.

### F.    Approval of the Settlement Is in the Public Interest.

The seventh factor, the public interest, is similarly satisfied. The Settlement represents the resolution of an alleged environmental impact to hundreds of Alpena residents, which will provide meaningful relief to the community and certainty to the Defendant. Beyond the public interest in efficient resolution of litigation generally, the Settlement serves the important interest of encouraging responsible environmental stewardship. This further cements the propriety of approval.

### II.   The Class Remains Appropriate for Settlement Certification.

The Court previously conditionally certified the Class. (*See* ECF No. 35). Nothing has changed since Plaintiffs made the initial showing in satisfaction of certification in his Motion for Preliminary Approval (ECF No. 33), and class certification remains equally, if not more, appropriate. More than 300 households submitted valid, approved claims. This further demonstrates that joinder of all these households would be impracticable and that the type of claims involved are overwhelmingly typical and common of one another. It is vastly superior to resolve these claims through an efficient claims process, as provided through this

Settlement, as opposed to a contested class certification motion—the denial of which could stand to exclude many, if not all, of these claimants.

### III.   The Requested Attorneys' Fees and Costs Are Reasonable.

Class Counsel requests an award of $265,000 in attorneys' fees, which represents approximately 27.5% of the net settlement fund, after deduction of costs. The fee requested by Class Counsel is significantly less than the amount provided through the Settlement and is well within the range of attorneys' fees awarded in similar common fund cases.

It is well established that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). "When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (citation omitted). The Sixth Circuit has stated that "[w]e give great deference to district courts when reviewing an attorney's fee award." *Moulton v. U.S. Steel*, 581 F.3d 344, 352 (6th Cir. 2009).

This Court has overwhelmingly concluded that "the percentage-of-the-fund approach is the better method" for determining the reasonableness of a fee award in

common fund cases. *New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 243 (E.D. Mich. 2016).

Under the percentage of the fund method, an attorney fee award of "close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions." *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) (listing cases); *see Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 504 (E.D. Mich. 2000) (approving attorneys' fee equalling one-third of net settlement fund).

*Moulton* set out the following factors relevant to the determination of whether a requested attorneys' fee award is reasonable under the circumstances:

(1) the value of the benefit rendered to the plaintiff class;

(2) The value of the services on an hourly basis;

(3) Whether the services were undertaken on a contingent fee basis;

(4) Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;

(5) The complexity of the litigation; and

(6) The professional skill and standing of counsel involved on both sides.

*Moulton*, 581 F.3d at 352.

Here, there were no objections to the proposed attorneys' fees of one-third (1/3) of the net settlement fund, and Class Counsel requests significantly less than the amount stipulated in the Settlement. This alone strongly supports the requested fee. *See Kogan*

21

*v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 504 (E.D. Mich. 2000) ("the notice sent to the class members informed them that the attorney fees and expenses could total as much as one-third of the settlement amount and not one class member objected."). The *Kogan* court approved an attorneys' fee award of one-third of the net settlement.

Each of the *Moulton* factors support Class Counsel's requested fee. The value of the benefit to the Class is outstanding, and each claimant will receive a significant monetary award because of Class Counsel's diligent and experienced advocacy. Class Counsel achieved this outstanding Settlement without incurring unnecessary costs or subjecting the Class to the risk and expense of prolonged, complex class litigation—the result of which was anything but certain.

Class Counsel's significant work and expenses were taken on an entirely contingent basis with no guarantee of any recovery. (**Ex. 2**, ¶41). Class Counsel's advocacy in this case came at the expense of taking on other cases, and rewarding Class Counsel for taking on this uncertain and difficult case is in the public interest. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380 (S.D. Ohio 2006) ("Absent adequate compensation, counsel will not be willing to undertake the risk of common fund class action litigation. Counsel who create a common fund for the benefit of a class are entitled to a payment of fees and expenses from the fund relative to the benefit achieved."). In noxious air pollution class actions in particular, the public interest strongly supports rewarding experienced counsel because there is a very limited private

market for these risky and expensive cases.

The terms of the retainer agreement with the named Plaintiff provided for a 33% recovery of any settlement benefits. (**Ex. 2**, ¶41). Thus, the market for similar legal services supports the requested fee, which is substantially less than called for by both the retainer agreement and the Settlement.

As discussed above, this is highly complex litigation, and there are numerous practical and legal barriers that render any recovery whatsoever, let alone on behalf of the Class, risky and uncertain. Because of LSC's decades of experience litigating cases of this type, substantial benefits were obtained for the Class. The *Moulton* factors overwhelmingly support approving the requested fee.

## IV.   The Court Should Approve Reimbursement of Reasonable Litigation Expenses.

"In common fund type cases … class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement[.]" *Allan v. Realcomp II, Ltd.*, 2014 WL 12656718, at *2 (E.D. Mich. Sept. 4, 2014). This "include[s] costs of administration." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 282(6th Cir. 2016).

To date, Class Counsel has incurred $34,827.24 in out-of-pocket expenses that were necessary in advancing Plaintiffs' claims to resolution. (**Ex. 2**, 38; **Ex. 2(A)**, LSC Cost Sheet). Additionally, Class Counsel will be solely responsible for the costs of finalizing the Settlement and disbursing payment to the Class, which remains

ongoing, as the claims period is still open. Effectuating a settlement like this after final approval typically costs up to $10,000. (**Ex. 2**, ¶39). However, Plaintiffs will limit their request for ongoing settlement administration duties to approximately $5,000. Accordingly, Plaintiffs request reimbursement of out-of-pocket costs not to exceed $40,000.[6]

The requested costs include itemized amounts for copies and postage, freedom of information requests, procurement of class mailing lists, legal research, very limited travel, costs of the settlement notice, and mediation costs with Judge Rosen. (**Ex. 2(A)**, LSC Cost Sheet). These requested expenses were necessary to prosecution of the litigation and are eminently reasonable considering that Class Counsel has borne the entire cost of the litigation, including by providing the class notice and administering the Settlement. Class Counsel has taken every step possible to costs low in this case, to ensure the largest possible recovery for the Class. The request for reimbursement of actual costs is reasonable and should be approved.

## V.    A Modest $1,500 Incentive Award to the Named Plaintiffs Is Appropriate and Reasonable.

The Settlement provides for a modest incentive payment of $1,500 to each of the named Plaintiffs for their efforts in pursuing and obtaining this excellent result for the Class. (**Ex. 1**, pg. 15, § 5(b)). "Incentive awards are typically awards to class

---

[6] This includes the $34,827.24 in expenditures to date, in addition to up to $5,172.76 to account for ongoing administration costs.

representatives for their often extensive involvement with a lawsuit." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir.2003); *see In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at *5 (E.D. Mich. Jan. 20, 2015) ("Numerous courts have found it appropriate to specially reward named class plaintiffs for the benefits they have conferred.").

The named Plaintiffs-Class Representatives in this case stepped forward to pursue this litigation on behalf of the Alpena community, taking on all the risks inherent to federal litigation. Plaintiffs have been highly responsive to all requests for information by counsel and have done everything asked of them to help achieve this outstanding result. (**Ex. 2**, ¶43). Accordingly, a modest incentive award for their efforts is appropriate and should be granted.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court finally approve the Settlement and enter the order attached hereto as **Exhibit 5**.

Dated: February 20, 2024                Respectfully Submitted,

                                        */s/ Matthew Z. Robb*
                                        Steven D. Liddle
                                        Matthew Z. Robb
                                        **LIDDLE SHEETS COULSON PC**
                                        975 E. Jefferson Avenue
                                        Detroit, MI 48207
                                        (313) 392-0015
                                        sliddle@lsccounsel.com
                                        mrobb@lsccounsel.com
                                        *Attorneys for Plaintiffs & the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 20, 2024, I served a copy of the foregoing upon all counsel of record via the Court's CM/ECF system, which will send notifications of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

*/s/ Matthew Z. Robb*
Matthew Z. Robb
